Mr. Justice Cox
delivered the opinion of the court:
We have had under consideration these two cases against the Baltimore & Potomac Railroad Company. They are fair specimens of a large number of cases now awaiting trial, all of which grow out of the same alleged grievances and involve to a great e-xtent the same questions of law.
In the case of Neitzey, the complaint is that the company *40 without authority of law, laid down in addition to its main track, four separate tracks or sidings along the bed of Maryland Avenue, in this city, embracing a width of some sixty odd feet, and, not content with passing over its main track, converted the whole street to the width mentioned, to the purposes of a freight depot or station, by placing cars on those tracks and allowing them to remain there permanently ; by loading and unloading its cars, a great deal of the freight of which was of a very noxious and offensive character, such as manure, fertilizers, etc.; that it allowed cattle cars to stand there, and cars that had been used for the transportation of cattle, manure, etc.; all of which resulted in great inconvenience being experienced by the plaintiff, as one of the residents of that neighborhood; and he claims damages for that, as also for the permanent depreciation of his property.
At the trial of the case, the plaintiff made some offers of testimony and asked several instructions, all in the line of asserting the right to recover damages for the alleged permanent depreciation of his property. All those instructions were overruled, and the offers of evidence refused by the court, and, we think, rightly; because a nuisance growing out of acts not authorized by law must be presumed to be of a temporary and transitory character, because there is a legal mode of removing it. After that the court went on to instruct the the jury as follows
“If the jury find for the plaintiff, then the proper measure of damages to be allowed is such sum as will reasonably compensate him for the annoyance and discomforts, if any, to which he and his family may have been subjected by being deprived thereby of the reasonable use and occupation of the premises, during the period of time in which they may have been subjected to such annoyances and discomforts as are described in the plaintiff’s prayers.”
To which instruction the plaintiff, by his attorney, excepts, and for the reason that, under it, the element of injury to the property was not allowed to be taken into consideration by the jury in their estimate of damages.
*41 If this means temporary damage of the property, such as causing the plastering to crack and fall down, as we suppose it meant, it is perhaps an error, but the error is a very trifling one, because the testimony shows that the damages sustained in this way could have been repaired for a sum not exceeding $15, and it was not so serious an error that this court would feel the necessity of directing a new trial on this account.
But after that the court instructed the jury that “the defendant has a right to use the public street to a reasonable extent for the purpose of loading and unloading its cars, and therefore the plaintiff cannot recover upon the pleadings and proofs in this case, for any annoyances to him or his family resulting from so loading or unloading cars.”
This was excepted to, and this exception, we think, must be sustained. We think it was error to instruct the jury that the defendant had a right, under any circumstances to unload cars on the public streets; in other words, to convert the public streets to the purposes of a freight yard. As this matter was settled by us in the case of Knight against the same company, it is hardly worth while to review the ground taken in that case. It may be proper here, however, to enunciate some general principles to guide in the further trial of this large number of cases.
In the first place the jury ought to be educated to discriminate clearly between a rightful and a wrongful use of the streets, if it can be done. The acts of Congress originally authorized this company to extend its lateral road into the District of Columbia, and “to exercise the same powers, rights and privileges, and to be subject to the same restrictions, in the extension and construction of the said lateral railroad into and within the said District, as it may exercise, or is subject to, under and by intent of its said charter or act of incorporation;” that is, its charter from the State of Maryland. And by act of March 18, 1869, it was authorized to extend the road upon either of two designated routes to the intersection of south C and west 9th streets, *42 the site of its permanent station inside of the city of Washington.
Afterwards, in June of 1810, it was authorized to extend its lateral branch, authorized by the act to which this was a supplement, “by way of Maryland avenue, conforming to its grade, to the viaduct over the Potomac river at the city of Washington, known as the Long Bridge,” and thence into Yirginia.
There was clear legislative authority to this company to extend its road from the depot in question to the Long Bridge and over it, so as to connect with the Yirginia roads. It was authorized to exercise the same privileges conferred upon it by its original charter, and among those privileges was one that the road should not be any more than sixty-six feet wide, “ except at or near its depots or stations, where the width may be made greater, with as many tracks as the president and directors may deem necessary.”
We suppose that it has that same privilege in this District of having all the tracks necessary in the immediate vicinity of the station. The object of these various tracks is supposed to be principally to break up the trains so as to carry them into the station, or to carry cars out over these different tracks to make up trains.
These are privileges which are conferred by competent authority, and any inconvenience which may result to private individuals from their careful exercise is damnum absque injuria, and not a subject of action at all. It is a trite old rule which we have had occasion often to assert, and which the authorities still sustain.
But the company is not authorized, under these acts, to convert the public highways, the streets and avenues of the city, into freight yards. The proper place for cars, when not in use, is the depot, station or yard of the company; and the proper place to load and unload freight is a freight station. It has no right, therefore, to incumber the street with cars and to leave them there when not in use. That is an unauthorized occupation of a public highway.
Still that, if no private inconvenience results from it, is *43 simply an indictable nuisance, and not a private nuisance, and the same may be said of unloading freight in a street. If it occasions no private inconvenience to anybody, it may be treated as a part of the same public nuisance, subjecting the offender to indictment.
But when these cars have been used for the conveyance of offensive matter so as to infect the whole atmosphere with noxious odors, and when the freight loaded and unloaded there consists of similar material, and the process of bringing the cars there and taking them away for the purpose of loading and unloading, causes annoyance by jarring the neighboring houses, and the smoke from the engines penetrates the dwellings, all this then becomes more than a public nuisance, it becomes a private nuisance; so that the declaration in this case sets forth clearly an actionable nuisance, the occupation of this street in a way that was offensive and injurious to the private property in the neighborhood and to the persous occupying it; and the proof clearly makes a case. Therefore, no occupation of the streets for these purposes can be “ reasonable.”
The instruction below was that the defendant had a right to use the public street, “to a reasonable extent,” for the purpose of loading and unloading its cars. If loading and unloading cars in the streets is not authorized at all by law, it cannot be reasonable, although it may not be actionable when not attended with injurious consequences to individuals. We think there was decided error in this instruction of the court below.
We believe both parties are desirous of having a new trial in this case, and we are disposed to accommodate them.
A new trial is accordingly ordered.
In the case of Anderson, some eighteen exceptions were taken on the part of the defendant. We see very little to find fault with in the rulings of the court in this particular case, and we think that all the exceptions of the defendant will have tobe overruled. The fourteenth exception might be good if the instruction requested had been quali-. *44 fied. The instruction asked was, that the plaintiff was not entitled to recover anything on account, or by reason of the smoke or cinders expelled from or noises made by locomotive engines and trains of the defendant passing and repassing over the main track of the railroad, etc. If this had been restricted to such annoyance as unavoidably resulted from the lawful use of the road, it would have been proper.
There is an objection, however, to a prayer granted at the instance of the plaintiff. The court told the jury that if they found from the evidence that the plaintiff was the owner of a lot of ground, designating it, etc., and “that the defendant during said period, or any part of it, used the said avenue between said streets and in front of said premises, the said dwelling house of the plaintiff, for the purpose of there loading, unloading and delivering freight and for moving and shifting its cars, so loaded or unloaded, back and forth in front of the said premises of the plaintiff by locomotive engines, propelled by steam, and that said loading and unloading and delivering of freight, if any, and said moving and shifting of cars, if any, were attended with loud and disagreeable noises and profane swearing which could be distinctly héard in the plaintiff’s said dwelling, and that soot and cinders were thrown from said engines while so engaged, into and upon the said dwelling house of the plaintiff, and that said soot and cinders were so thrown into and upon said dwelling house and premises in such quantities and so frequently as to be an annoyance and inconvenience to the plaintiff, and to injure and soil the walls and furniture in said dwelling house; and further find that any of said cars, if any, so loaded and unloaded were in a filthy condition, or any of said freight, if any, so loaded and unloaded was of an unsavory character, and engendered foul and unwholesome odors and stenches which were carried into said dwelling house in such quantities and so frequently as to annoy and offend the plaintiff, and that said noises and swearing were of such daily and nightly occurrence and so distinctly heard in said dwelling house as to annoy, harass and disturb the plaintiff living *45 therein, and that said noises and said soot and cinders, and said odors and stenches interfered with the enjoyment by the plaintiff of his said dwelling house, then the plaintiff is entitled to recover in this action.”
That is to say, if certain facts enumerated occurred, the plaintiff has a right to recover; or, in other words, the plaintiff is entitled to recover for all of these several things. Now it is claimed that the company should not be charged with the profanity occurring in that neighborhood, and we hardly see how it can be'properly so charged. We have seen a case in the books in which a man was held responsible for something like this: where he gave an entertainment on the common or high road which attracted many disorderly, noisy and unruly people, he was held responsible for the nuisance occasioned by them. But that was a case where the very business in which he was engaged invited people of that class. It was a part of his entertainment and a necessary incident of it that this nuisance should be created.
This instruction does not show that the profanity complained of was practiced by the persons employed by the defendant at all. In fact, the evidence shows that it was due probably to the tramps and outsiders congregated there for the purpose of picking up loose scraps and pieces of coal and things of that sort. The business transacted by this company did not certainly invite profanity or the crowd on that street; it was not at all incident to the prosecution of the business that they should assemble there and blaspheme, and we do not think the defendant properly chargeable with that part of the grievances complained of.
Nevertheless it was allowed to go to the jury and was an element which entered into the amount of damages they allowed, and the damages seem to us to be pretty large. This seems to us to be an error which tended to affect that question. It is almost the only error that we see in the proceedings except in the last instruction which contained the same error which has been alluded to in the case of Neitzey — the instruction that the defendant might use *46 the street to a reasonable extent for the purpose of loading or unloading cars. That was an error, however, that the defendant only excepted to. The defendant claimed the right to use the street for all purposes without any restriction at all. The court restricted it to the reasonable use of the street for loading and unloading, and it excepts to that. We do not think the exception well taken. But the instruction as given is an instruction in favor of the defendant and it is not excepted to on the part of the plaintiff, so that we could not reverse the case simply on that ground. Nevertheless, it is a consideration not without weight that an opportunity will be thereby afforded of trying both cases upon a uniform rule and avoiding, in future, the error which was eommon to both.
A new trial is ordered.